IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KEIVANS HOSPITALITY, INC., | § | CASE NO. |
| D/B/A HILTON GARDEN INN, | § | |
| | § | |
| DEBTOR | § | |

**EMERGENCY MOTION FOR INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(C) OF THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY <u>RULE 4001 AS TO USE OF CASH COLLATERAL</u>**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE OUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 23 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Keivans Hospitality, Inc. (hereinafter "Debtor" or "Keivans"), debtor and debtor in possession, files this *Emergency Motion for Interim Order (i) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code, (ii) Granting Adequate Protection for the Use*

*Thereof, (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral* (the "Motion") and in support thereof, respectfully states as follows:

## I.  Summary and Emergency Basis

1.  This Chapter 11 case was filed on September 1, 2020 (the "Petition Date").

2.  The Debtor hereby seeks authorization to use cash collateral on an interim basis. Without such relief, the Debtor will suffer immediate and irreparable harm because the Debtor would have insufficient funds to continue the operation of its business. U.S. Bank National Association, as Trustee for the Benefit of the Registered Holders of Morgan Stanley Bank of America Merrill Lynch Trust 2013-C12, Commercial Mortgage Pass-Through Certificates, Series 2013-C12 ("Lender") asserts claims in the amount of approximately $9 million[1] and holds liens on substantially all of the Debtor's assets including accounts receivable. Midland Loan Services, a division of PNC Bank, National Association, acts as servicer for Lender. In addition, the U.S. Small Business Administration ("SBA") holds a junior lien on the Debtor's assets, including accounts receivable, to secure its claim of approximately $150,000.00. Lender and the SBA will be given replacement liens on post-petition receivables for use of its cash collateral in accordance with the proposed budget attached hereto as **Exhibit A.**

## II.  Jurisdiction and Venue

3.  This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157, 1334.

4.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

5.  Venue of the Debtor's Chapter 11 case is proper in this district pursuant to 28 U.S.C. §§ 1409.

---

[1] Debtor reserves the right to contest the validity and amount of Lender's claim in this case.

### III. <u>Introduction</u>

6. The above captioned Chapter 11 bankruptcy case was filed on September 1, 2020, under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et sq. (the "Bankruptcy Code"). The Debtor continues to manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

7. No trustee or examiner has been appointed in the Debtor's bankruptcy case. An official committee of unsecured creditors has not yet been established.

8. A detailed factual background of the Debtor's business and operations, as well as the commencement of this Chapter 11 case, is more fully set forth in the *Declaration of Ben Mousavi in Support of the Debtor's Chapter 11 Petition* by Debtor's principal, Ben Mousavi, which is filed contemporaneously herewith and incorporated herein by reference.

### IV. <u>Background</u>

#### A. Overview of Keivans

9. Keivans which was formed as a Texas corporation in 2006, and maintains its principal office and conducts its business operations at 2409 Texmati, Dr., Katy, Harris County, Texas. It operates as a Hilton Garden Inn hotel with 101 guest rooms, 1663 square feet meeting space and a 50 person capacity restaurant. The Debtor operates the hotel under a franchise agreement with Hilton Worldwide.

10. Historically, Keivans has been successful in its business operations. In 2018 and 2019 the Debtor reported gross revenues in the amounts of approximately $2.6 million and $3 million respectively. However, in 2020 the Debtor's revenues dropped precipitously to approximately $845,000.00 through the petition date ($1,267,500.00 annualized) due almost exclusively to the worldwide economic downturn resulting from the COVID-19 pandemic. This

loss in revenue has caused the Debtor to default on its loan obligations to Lender. However, the Debtor has been able to maintain its payments for payroll and to vendors. As a result, the Debtor has little unsecured debt other than past-due franchise payments to Hilton Worldwide.

11. Based upon Debtor's estimated value of the hotel and personal property of approximately 12.7 million, the Debtor believes Lender is oversecured and as a result will continue to be adequately protected during the pendency of this case from its collateral equity. In addition, Lender holds reserve funds in the approximate amount of $705,000.00 that additionally serves to adequately protect Lender.

### B. Loan Financing

12. In 2013, Bank of America, predecessor to Lender, advanced $9.5 million to Keivans and was granted a security interest against virtually all assets of the Debtor, including the hotel real property[2], personal property, rents, credit card receipts and other hotel revenue. The Debtor maintained all payments to Lender current until the impact of the pandemic negatively affected occupancy rates. As a result, the Debtor was unable to pay amounts due to Lender for April 2020 and subsequent months. Lender subsequently declared the loan in default. Despite the Debtor's efforts, it was unable to reach an agreement with Lender to forestall a foreclosure.

13. As of the Petition Date, Keivans had no accounts receivable other than credit card receipts. Approximately 90% of the Debtor's customers pay with credit cards which must be submitted for payment to the respective credit card companies. The typical delay in receiving payment is 3 days. On the Petition Date, Keivans had outstanding credit card receipts of $22,085.10.

---

[2] The Debtor leases the real property upon which the hotel is located pursuant to a ground lease with related entity Mousavi, LLC.

**BASIS FOR REQUESTED RELIEF**

    A.    **Cash Collateral and Authority to Use**

14.    As stated above, prior to the Petition Date, the Debtor granted liens to Lender and SBA against substantially all of its assets, including accounts receivable and credit card receipts.

15.    The Debtor hereby seeks authority to use cash collateral in connection with this Bankruptcy Case to preserve the value of Debtor's business. Pursuant to the Bankruptcy Code, the Debtor is required to provide adequate protection to its lenders with respect to its use of Cash Collateral.

16.    As stated above, the value of Lender's and SBA's collateral is greater than its outstanding debt. The Debtor expects that an agreed order for use of cash collateral on its initial 15-day budget will include, among others, the following:

    A.    Debtor may use cash collateral pursuant to an approved budget, with a 10-15% variance per line item so long as the amount of cash collateral used does not exceed the total amount for each weekly period in the budget. Unused amounts in one weekly period may be carried over to the subsequent periods.

    B.    Lender's and SBA's prepetition liens will be adequately protected by replacement liens on accounts receivable to the same extent and priority as its respective prepetition liens.

17.    Although Debtor has some cash available for operations, such cash will be rapidly depleted from routine operations of the hotel. The only viable source of funding for post-petition operations is cash collateral made available to the Debtor.

18.    Without the use of cash collateral on an interim basis, the Debtor would suffer immediate and irreparable harm pending a final hearing on the Motion and would likely be required to cease operations, causing harm to the Debtor and its estate, customers, and employees.

19. The importance in cases like these of access to cash was recognized in *In re George Ruggieri Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). The court in that case noted: "A debtor, attempting to reorganize in business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." Id. at 1019. 31. The Debtor anticipates its lenders will consent to the proposed use of Cash Collateral, subject to receiving replacement liens and perhaps other protections as provided in an agreed order. To the extent they do not consent, however, the Court may authorize the use of cash collateral by the Debtor provided that the Court determines that any objecting entity's interest is adequately protected. 11 U.S.C. § 363(c)(2)(B) and (e).

20. Section 361 sets forth three non-exclusive examples of what may constitute adequate protection. They include providing the secured creditor with "additional or replacement liens" and other relief that provides the secured creditor with the "indubitable equivalent" of the secured creditor's interest in the cash collateral. Legislative history indicates that Congress intended to provide courts with flexibility to grant relief on a case-by-case basis.

21. Pursuant to the Motion, the Debtor proposes to grant Lender and SBA replacement liens on post-petition accounts receivable, a recognized method for providing adequate protection as specified under sections 361 and 363.

22. In exchange for the use of Cash Collateral, as adequate protection for the use of the Cash Collateral, but only to the extent of the actual diminution in value of the pre-petition Collateral, the Debtor proposes to grant to Lender and SBA replacement liens in the form of security interests and liens upon the same types and kinds of assets upon which they held a prepetition lien, subject only to valid, perfected, and enforceable prepetition liens (if any) which are senior as of the Petition Date, as well as an additional lien upon the Debtor's post-petition

accounts and accounts receivables. The grant of replacement liens will only apply to the extent that the pre-petition Collateral was encumbered by valid and perfected liens and security interests (collectively, the "Replacement Liens"). The Replacement Liens will not attach to any avoidance actions under Chapter 5 of the Bankruptcy Code.

23. Bankruptcy Rule 4001(c)(2) states that 14 days' notice must be given before final approval of such cash Collateral use is given. With this Motion, the Debtor is providing the Lender and the SBA with 14 days' notice between the time of the filing of this Motion and request that the Court set a final hearing on this matter upon expiration of the 14-day notice period. The Debtor will suffer irreparable harm if the Motion is not immediately considered as it does not have the funds to continue operations. There is little harm to general unsecured creditors under this agreement since Lender already has a first lien on substantially all of the Debtor's assets and the SBA has a junior on such assets. Thus, if the Debtor cannot fund operations, it will have to cease operating and Lender may seek to lift the automatic stay to foreclose on its collateral to the detriment of all other creditors. Accordingly, emergency consideration of this motion is required.

## V. Conclusion

WHEREFORE, the Debtor respectfully requests that the Bankruptcy Court:

1) Set an emergency preliminary hearing on this Motion;

2) Enter a preliminary order authorizing the use of cash collateral pursuant to the attached budget for 14 days;

3) Schedule a final hearing on Debtor's use of cash collateral;

4) Granting all such other and further relief as is just and proper.

DATED:   September 1, 2020.

Respectfully submitted,

OKIN ADAMS LLP

*/s/ Timothy L. Wentworth*
TIMOTHY L. WENTWORTH
State Bar No. 21179000
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
PROPOSED COUNSEL TO THE DEBTOR

**CERTIFICATE OF CONFERENCE**

I hereby certify that the counsel for the Debtor attempted to confer with Christopher Chauvin, counsel for Lender, on an agreement on the interim use of cash collateral. Counsel for the Debtor was unable to confer with an agent for the SBA. Although an agreement has not yet been reached the parties will continue to discuss the terms of an acceptable interim order.

/s/     *Timothy L. Wentworth*
Timothy L. Wentworth

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 2nd day of September, 2020, a true and correct copy of the *Emergency Motion for Interim Order (i) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code, (ii) Granting Adequate Protection for the Use Thereof, (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral* was served via Electronic Mail on counsel or agents for Lender, the SBA and by Electronic Case Filing system for the United States Bankruptcy Court for the Southern District of Texas or First Class Mail Postage Prepaid on the United States Trustee, all parties in interest and creditors as shown on the attached service list.

Allegiance Bank
PO Box 41314
Houston, TX
77241-1314

Hilton Worldwide
4649 Paysphere Circle
Chicago, IL 60674

U.S. Small Business Administration
Office of Disaster Assistance
14925 Kingsport Rd.
Fort Worth, TX 76155

U.S. Bank National Association as Trustee
c/o Christopher Chauvin
Thompson & Knight, LLP
1722 Routh St., Suite 1500
Dallas, Texas 75201

                                                        /s/    *Timothy L. Wentworth*
                                                         Timothy L. Wentworth